UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MATTHEW BRUNN,

               Plaintiff,

v.

UNKNOWN HANCOCK,

               Defendant.

_____/

Case No. 2:26-cv-66

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues URF **Corrections Officer Unknown Hancock**.

On September 28, 2025, Plaintiff alleges that he noticed black mold in the dish tank area of his workspace. (Compl., ECF No. 1, PageID.3.) Plaintiff told Defendant Hancock about the

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

black mold. (*Id*.) Plaintiff was "assigned to the dish tank in September 2025 where [Plaintiff] was ordered to work regardless of the black mold."[2] (*Id*.) Plaintiff states that Defendant Hancock "tried scrubbing some of it clean, which was ineffective." (*Id*.) Plaintiff asserts "[t]his [was] a clear violation of policy P.D. 04.07.130." (*Id*.) Plaintiff claims he "started to feel ill due to the long-term exposure of black mold." (*Id*.)

On October 24, 2025, Plaintiff sent "an urgent medical kite due to [his] symptoms." (*Id*.) But "healthcare failed to act in a timely manner causing [Plaintiff's] symptoms to progress." (*Id*.) On October 26, 2025, "[d]ue to the progression of [Plaintiff's] symptoms[,] [he] was put on quarantine status[.]" (*Id*.) On October 27, 2025, healthcare performed a nasal swab test on Plaintiff. (*Id*.) On October 28, 2025, "MDOC began to remove [the] black mold along with the tile it was growing on." (*Id*.) That same day, on October 28, 2025, "medical drew blood from [Plaintiff]." (*Id*.) Plaintiff states that his "[b]loodwork came back positive for influenza." (*Id*.)

Plaintiff asserts that the "[f]ailure to remove black mold in a timely manner caused long-term exposure," and "[d]ue to exposure, it caused [Plaintiff's] immune system to deteriorate, making [him] susceptible to illness." (*Id*.) Furthermore, Plaintiff asserts that "the improper care of MDOC led to an illness that caused physical and psychological pain." (*Id*., PageID.4.) Plaintiff also alleges that his influenza made it difficult for him to breathe and sleep. (*Id*.) Plaintiff claims that he still struggles to catch his breath and has pain in his chest. (*Id*.) Plaintiff alleges that the "improper care and deliberate indifference in this situation caused all of this when it could've been avoided." (*Id*.)

---

[2] In this opinion, the Court corrects the spelling and punctuation in quotations from Plaintiff's complaint.

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise Eighth Amendment claims regarding the conditions of his confinement and alleged inadequate medical care. As relief, Plaintiff seeks compensatory damages. (*Id.*, PageID.5.)

## II.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Eighth Amendment Conditions of Confinement Claims

Plaintiff raises an Eighth Amendment conditions of confinement claim regarding the black mold in his workspace. (*See* Compl., ECF No. 1, PageID.3–4.)

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). Prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and take reasonable measures to guarantee the safety of the inmates." *Mingus v. Butler*, 591 F.3d 474, 479 (6th Cir. 2010) (internal punctuation and quotation marks omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). But "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society[.]'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus*, 591 F.3d at 479–80 (6th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The

6

deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. To satisfy the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In this case, Plaintiff alleges that the exposure to black mold in his workspace "caused [Plaintiff's] immune system to deteriorate, making [him] susceptible to illness" and that he had influenza. (*See* Compl., ECF No. 1, PageID.3.) This Court has found that "[e]xposure to black mold may, in an appropriate case, be sufficiently serious as to satisfy the objective component of the Eighth Amendment." *Patrick v. Schroeder*, No. 2:23-cv-26, 2023 WL 2522057, at *5 (W.D. Mich. Mar. 15, 2023), *aff'd* No. 23-1313, slip order at 2–3 (6th Cir. Oct. 5, 2023). And, courts have found that exposure to mold satisfies the objective standard "if the prisoner alleges physical injury as a result of the exposure." *Durden v. Erway*, No. 1:24-cv-1159, 2025 WL 836008, at *5 (W.D. Mich. Mar. 18, 2025) (citing cases). Plaintiff alleges that he caught influenza due to the exposure to black mold weakening his immune system, and that he had difficulty breathing and pain and his chest. At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's allegations regarding his illness satisfy the objective component of the relevant two-prong standard. *See Farmer*, 511 U.S. at 834. However, as explained below, as to the subjective component, Plaintiff fails to allege sufficient facts to show that Defendant Hancock disregarded an excessive risk to Plaintiff's health or safety.

Plaintiff alleges that he told Defendant Hancock about the black mold on September 28, 2025. (Compl., ECF No. 1, PageID.3.) In response to Plaintiff's advisement regarding the black mold in the "dish tank area," Defendant Hancock then tried "scrubbing some of it clean." (*Id.*) Plaintiff alleges that Defendant Hancock's "scrubbing" was "ineffective." (*Id.*) Thereafter, one month later, on October 28, 2025, the "MDOC began to remove [the] black mold along with the tile it was growing on." (*Id.*)

Plaintiff's allegations show that Defendant Hancock was aware of the black mold; however, Plaintiff's allegations do not show that Defendant Hancock ignored a substantial risk of harm to Plaintiff. Instead, Plaintiff's allegations show that after Plaintiff informed Defendant Hancock of the black mold, Defendant Hancock attempted to remove the mold by scrubbing it. Plaintiff contends that scrubbing the mold was ineffective, but the fact that Defendant Hancock's attempt to remedy the issue was "ineffective" does not show that Defendant Hancock was deliberately indifferent to a substantial risk of harm. Furthermore, one month after notifying Defendant Hancock of the mold, the MDOC removed the mold and the tile it was growing on. Under these circumstances, Plaintiff's allegations show that Defendant Hancock promptly acted and tried to alleviate the risk of harm by attempting to scrub off the mold. And about one month later, the mold was removed. Although Plaintiff became sick regardless, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Here, nothing in the complaint suggests that Defendant Hancock failed to "respond[] reasonably to the risk." *Id.* Therefore, Plaintiff fails to show that Defendant Hancock disregarded an excessive risk of harm to Plaintiff from the black mold because Plaintiff's allegations show that

8

Defendant Hancock promptly responded by attempting to remove the mold himself, and then one month later, it was ultimately removed by the prison.

Furthermore, to the extent that Plaintiff claims that Defendant Hancock's response to the presence of black mold violated prison policy, the failure to follow internal policies, without more, does not constitute deliberate indifference. *Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018).

Accordingly, for these reasons, Plaintiff fails to state an Eighth Amendment conditions of confinement claim against Defendant Hancock and this claim will be dismissed.

### B.     Eighth Amendment Medical Care Claims

In addition to Plaintiff's conditions of confinement claim, Plaintiff raises an Eighth Amendment claim regarding inadequate medical care. (*See* Compl., ECF No. 1, PageID.3–4.)

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care also has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

9

In Plaintiff's complaint, he alleges that "healthcare failed to act in a timely manner causing [his] symptoms to progress," and he faults "medical" for the treatment that he received. (Compl., ECF No. 1, PageID.3) As to the specific medical treatment that Plaintiff received, Plaintiff alleges he filed an urgent medical kite on October 24, 2025. (*Id.*) On October 26, 2025, Plaintiff was "put on quarantine status." (*Id.*) On October 27, 2025, healthcare performed a nasal swab test on Plaintiff. (*Id.*) On October 28, 2025, "medical drew blood" from Plaintiff. (*Id.*) The blood test results revealed Plaintiff tested positive for influenza. (*Id.*)

As an initial matter, Plaintiff's references to "healthcare" and "medical" are not sufficient to state a claim because "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable. . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Plaintiff faults only these groups, and he does not allege that any individual, let alone Defendant Hancock, was involved in Plaintiff's receipt of medical care. Under these circumstances, Plaintiff fails to state an Eighth Amendment medical care claim against Defendant Hancock, and Plaintiff's references to "healthcare" and "medical" do not support a reasonable inference that each person working for those entities violated Plaintiff's constitutional rights. *See id*.

Furthermore, even setting aside this issue, Plaintiff's own allegations show that "healthcare" and "medical" were responsive to Plaintiff's medical needs. Specifically, Plaintiff alleges that he sent a medical kite, and two days later, he was put in quarantine. One day after being quarantined, Plaintiff was seen by healthcare and given a nasal swab test. Plaintiff does not state what the results of that test were. The day after the nasal swab, healthcare did a blood test,

10

which resulted in Plaintiff's influenza diagnosis. Taken as true, *see Denton v. Hernandez*, 504 U.S. 25, 33 (1992), these allegations show that healthcare responded to Plaintiff's request for medical care within three days. Although Plaintiff does not state how long he waited to receive the results of the blood test, Plaintiff's own allegations show that he received prompt care and, eventually, an accurate diagnosis. Plaintiff's statement that "healthcare failed to act in a timely manner causing [his] symptoms to progress," is a conclusory statement unsupported by facts. *See Iqbal*, 556 at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, for all of these reasons, Plaintiff fails to state an Eighth Amendment claim for inadequate medical care and this claim will be dismissed.

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.


Dated:    August 6, 2026                              /s/ *Maarten Vermaat*

                                                    Maarten Vermaat
                                                    United States Magistrate Judge


11